UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

April 21, 2015

Stephen Brewer
13 Innisbrook Drive
Clifton Park, NY 12065

Derek P. Roussillon, Esq.
Yodeski Y. Acquie, Esq.
Zachary S. Schultz, Esq.
Miles & Stockbridge P.C.
100 Light Street
Baltimore, MD 21202

   RE: The Sherwin Williams Company, *et al.* v. Christeve Enterprises, LLC, *et al.*
      Civil Case No. SAG-15-557

Dear Mr. Brewer and Counsel:

  Pending before the Court is a Motion for Summary Judgment filed by Plaintiffs The Sherwin Williams Company, formerly known as Sherwin-Williams Automotive Finishes Corp., and The Sherwin-Williams Company, doing business as Sherwin-Williams Automotive Finishes (collectively, "Sherwin-Williams"). (ECF No. 33). The Motion is ripe for disposition. The Court, having reviewed the Motion and supporting documents, finds no hearing necessary. *See* Loc. R. 105.6 (D. Md. 2014). For the reasons set forth below, the Court will deny the Motion without prejudice.

  **I. Background**

  On August 27, 2009, Defendant Christeve Enterprises, LLC ("Enterprises"), doing business as CarClinix, executed a Supply Agreement with Sherwin-Williams (the "Enterprises Supply Agreement"). Under this contract, Enterprises agreed to two principal obligations during the contract term: (1) it would exclusively use Sherwin-Williams's automotive paint and coating products; and (2) it would purchase from Sherwin-Williams all of its requirements for automotive paints, coatings, and related products. For its part, Sherwin-Williams agreed to a prepaid discount of $65,000.00 and a twelve percent discount on all product sales under the agreement. The Enterprises Supply Agreement further specified that the contract term would commence on the execution date and "continue until the date upon which Net Sales . . . is equal to [$532,000.00]." (Defs.' Notice of Filing Under Seal Ex. A, ["Enterprises Supply Agreement"] at 1, ECF No. 26-1). Net Sales, in turn, was defined as gross sales of Sherwin-Williams's products to Enterprises during the contract term,

*The Sherwin Williams Company,* et al. *v. Christeve Enterprises, LLC,* et al.
Civil Case No. SAG-15-557
April 21, 2015
Page 2

less certain deductions such as credits, discounts, and rebates.

On August 18, 2009, Defendant Stephen Brewer, a member of Enterprises, executed a written personal guaranty regarding the obligations in the Enterprises Supply Agreement (the "Enterprises Guaranty"). Specifically, Brewer agreed that "[u]pon the failure by [Enterprises] to pay Sherwin-Williams the full amount that is due and payable under any of the Obligations [of the Enterprises Supply Agreement], [Brewer] shall pay to Sherwin-Williams upon demand the full amount that is due and payable under all of the Obligations." (Caruso Aff. Ex. 1 ["Enterprises Guaranty"], at 1, ECF No. 33-2). Though net sales had not eclipsed $532,000.00, Enterprises ceased purchasing automotive paints and related products from Sherwin-Williams in December, 2010 and March, 2011, respectively. Brewer has not satisfied the financial obligations that Sherwin-Williams considers due under the Enterprises Supply Agreement.

On January 20, 2010, another entity of which Brewer was a member, Christeve LLC "(Christeve"), then doing business as CarClinix, executed a Supply Agreement with Sherwin-Williams (the "Christeve Supply Agreement"). (Defs.' Notice of Filing Under Seal Ex. B, ["Christeve Supply Agreement"] at 1, ECF No. 26-2). This contract was nearly identical to the Enterprises Supply Agreement, except that the contract term expired when Net Sales, identically defined, reached $501,368.00[1] and that Sherwin-Williams agreed to provide a prepaid discount of $73,994.00. On January 19, 2011, Brewer executed a written personal guaranty regarding the Christeve Supply Agreement (collectively with the Enterprises Guaranty, the "Personal Guarantees"), including the same terms as the Enterprises Guaranty. (Caruso Aff. Ex. 2, ["Christeve Guaranty"] at 1, ECF No. 33-2). Though Net Sales had not reached $501,368.00, Christeve ceased purchasing automotive paints from Sherwin-Williams in April 2012. Brewer has not satisfied the financial obligations that Sherwin-Williams considers due under the Christeve Supply Agreement.

Sherwin-Williams initiated this action on February 26, 2015, bringing breach of contract claims against Brewer, Enterprises, and Christeve.[2] (ECF No. 1). On June 29, 2015, Brewer, acting

---

[1] The Court will refer to the $532,000.00 and the $501,3681.00 collectively as the "Net Sales Figures."

[2] Brewer argues that Sherwin-Williams's suit is barred by Maryland's three-year statute of limitations. *See* Md. Code Ann., Cts. & Jud.Proc. § 5-101 (establishing a three-year statute of limitations for civil actions, unless another Code provision states otherwise). To be sure, Maryland's statute of limitations applies to this case. *See Harvard v. Perdue Farms, Inc.*, 403 F. Supp. 2d 462, 466 (D. Md. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)) (explaining that when a federal court is sitting in diversity, the court must apply the choice of law rules of the forum state); *Doughty v. Prettyman*, 219 Md. 83, 88, 148 A.2d 438, 440 (1959) (stating

*The Sherwin Williams Company,* et al. *v. Christeve Enterprises, LLC,* et al.
Civil Case No. SAG-15-557
April 21, 2015
Page 3

*pro se*, filed an Answer on behalf of Enterprises and Christeve ("the Corporate Defendants") and himself. (ECF No. 18). On July 8, 2015, however, the Court struck the Answer as to the Corporate Defendants because a limited liability company cannot appear *pro se*, even if represented by one of its members. (ECF No. 20); *see Allied Colloids, Inc. v. Jadair, Inc.*, 139 F.3d 887 (4th Cir. 1998); *see also* Loc. R. 101.1(a) (D. Md. 2014). The Court afforded the Corporate Defendants an additional fourteen days to file a responsive pleading through counsel. (ECF No. 20). On September 22, 2015, the Court ordered default judgment against Enterprises for $495,203.26 and against Christeve for $427,688.86. (ECF No. 29). On February 23, 2016, Sherwin-Williams filed a Motion for Summary Judgment against Brewer (ECF No. 33). Brewer filed a Response on March 11, 2016 (ECF No. 37), and Sherwin-Williams submitted a Reply on March 25, 2016 (ECF No. 38).

## II. Analysis

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). There is a genuine dispute of material fact when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmovant's favor. *Anderson*, 477 U.S. at 248.

Sherwin-Williams argues that it is entitled to judgment as a matter of law that Brewer breached the Personal Guarantees because it is undisputed that the Corporate Defendants failed to meet the Net Sales Figures and that Brewer has failed to pay the resultant damages. As Sherwin-Williams notes, the Court entered default judgment against the Corporate Defendants on September

---

that under Maryland choice of law rules, statutes of limitations are matters of procedural law governed by the law of the forum state). Breach of contract actions, however, are subject to a four-year statute of limitations. *See* Md. Code Ann., Com. Law § 2-725. It is undisputed that Enterprises and Christeve ceased purchasing products from Sherwin-Williams in March, 2011 and April, 2012, respectively. Because these dates fall within the limitations period, the Court finds this suit is not time-barred.

*The Sherwin Williams Company,* et al. *v. Christeve Enterprises, LLC,* et al.
Civil Case No. SAG-15-557
April 21, 2015
Page 4

22, 2015. (ECF No. 29). Importantly, however, this default judgment was not a definitive adjudication that the Corporate Defendants breached the Supply Agreements. *See Concentric Methods, LLC v. Cillian Techs., LLC*, No. DKC-11-1130, 2011 WL 6180143, at *1 (D. Md. Dec. 12, 2011) (explaining that in a breach of contract case, when a defendant is unresponsive, default judgment is warranted against the defendant if the complaint adequately pleads a breach of contract claim). Thus, to resolve whether Sherwin-Williams is entitled to judgment as a matter of law that Brewer breached the Personal Guarantees, the Court cannot rely on the default judgment, but rather, must determine whether Sherwin-Williams has shown that there is no dispute that the Corporate Defendants breached the Supply Agreements.

As a preliminary matter, the Court must decide what law to apply. The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1). (ECF No. 1). Thus, the Court must apply the substantive law of the state in which the action arose, *see Nationwide Mut. Ins. Co. v. Welker*, 792 F. Supp. 433, 437 (D. Md. 1992) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)), and the choice of law rules of the forum. *See Harvard*, 403 F. Supp. 2d at 466 (citing *Klaxon Co.*, 313 U.S. at 496). Under Maryland choice of law rules, Maryland courts generally enforce choice of law provisions in contracts. *See Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015) (citing *Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 572, 659 A.2d 1295, 1301 (1995)). Thus, because the Supply Agreements expressly provide that they shall be governed by Ohio law, the Court will apply Ohio law.

Under Ohio law, a claim for breach of contract consists of four elements: "(1) a contract existed, (2) the plaintiff fulfilled his obligations, (3) the defendant failed to fulfill his obligations, and (4) damages resulted from this failure." *Anzalaco v. Graber*, 970 N.E.2d 1143, 1148 (Ohio Ct. App. 2012) (citing *Lawrence v. Lorain Cty. Cmty. Coll.*, 127 Ohio. App. 3d 546, 549, 713 N.E.2d 478, 480 (1998)). Determining contractual obligations requires contract interpretation. *See id.* (interpreting contract language to ascertain the parties' obligations under a real estate purchase agreement). "The primary objective in contract interpretation is to give effect to the intent of the parties as expressed in the language they chose to employ in their agreement." *Id.* (citing *Aultman Hosp. Assn. v. Cmty. Mut. Ins. Co.*, 46 Ohio. St. 3d 51, 53, 544 N.E.2d 920, 923 (1989)).

When a contract is unambiguous, "a court must give effect to the expressed intentions of the parties." *Westbrock v. W. Ohio Health Care Corp.*, 137 Ohio App. 3d 304, 311, 738 N.E.2d 799, 803-04 (2000) (citing *U.S. Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App. 3d 55, 716 N.E.2d 1201, 1207-08 (1998)). A contract is ambiguous when it is reasonably subject to more than one interpretation. *Id.* at 804 (citations omitted). "[W]hether a contract is ambiguous is a question of law." *Id.* (citing *Potti v. Duramed Pharm., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991)). A court should strictly construe ambiguous contracts against the drafting party. *Westbrock*, 738 N.E.2d at 806–07 (quoting *Zimmerman v. Eagle Mortg. Corp.*, 110 Ohio App. 3d 762, 777-78, 675 N.E.2d

*The Sherwin Williams Company,* et al. *v. Christeve Enterprises, LLC,* et al.
Civil Case No. SAG-15-557
April 21, 2015
Page 5

480, 489 (1996)). Further, when a contract is ambiguous, a court may consider extrinsic evidence. *Id.* at 806 (citing *United States Fid.,* 716 N.E.2d at 1207–09). Doing so, however, converts contract interpretation into a question of fact. *Maverick Oil & Gas, Inc. v. Barberton City Sch. Dist. Bd. of Educ.*, 181 Ohio App. 3d 605, 613, 872 N.E.2d 322, 329 (2007) (citations omitted).

A requirements contract is "a contract in writing where one party promises to buy exclusively, and the other party agrees to deliver specific goods or services which the buyer may need for a certain period of time." *H & C Ag Servs., LLC v. Ohio Fresh Eggs, LLC*, 41 N.E.3d 915, 924 (Ohio Ct. App. 2015) (citations and internal quotation marks omitted). The quantity term in a requirements contract "is measured by the good-faith requirements of the buyer." *Id.* "The seller assumes the risk of all good faith variations in the buyer's requirements." *Cyril Bath Co. v. Winters Indus., a Div. of the Whittaker Corp.*, 892 F.2d 465, 467 (6th Cir. 1989) (applying Ohio law). The language of a contract unambiguously indicates a requirements contract when the contract includes the word "requirements." *Bass, Hurwitz & Poliner, CPA's v. State*, No. 88AP-1120, 1989 WL 87078, at *2 (Ohio Ct. App. Aug. 3, 1989).

Here, the Supply Agreements are subject to two alternative reasonable interpretations. The Supply Agreements provide that the Corporate Defendants were to exclusively use Sherwin-Williams products and the Corporate Defendants would purchase all of their "requirements" from Sherwin-Williams. (Enterprises Supply Agreement at 1); (Christeve Supply Agreement at 1). Further, the Net Sales Figures only appear in the "Term of Agreement" section and the Supply Agreements never use the phrase "minimum purchase." Accordingly, it is reasonable to interpret the Supply Agreements as requirements contracts, under which the Corporate Defendants were obligated to purchase their requirements exclusively from Sherwin-Williams, but were not obligated to meet the Net Sales Figures until their requirements reached that level.

Alternatively, it is also reasonable to interpret the Supply Agreements as requiring the Corporate Defendants to meet the Net Sales Figures regardless of their requirements. In other words, it is reasonable to conclude that the parties intended to treat the Net Sales Figures as minimum purchase requirements. Section 5 of the Supply Agreements provides that the Corporate Defendants must repay the prepaid discounts if they "for any reason cease[] purchasing (or purchasing its requirements for) Products from Sherwin-Williams." (Enterprises Supply Agreement at 1); (Christeve Supply Agreement at 1). This language reasonably suggests that the parties intended that the Corporate Defendants be obligated to purchase Sherwin-Williams products both in accordance with and outside their requirements until the Net Sales Figures were met. Because the Supply Agreements are reasonably subject to more than one interpretation, the Court finds them ambiguous as a matter of law.

*The Sherwin Williams Company,* et al. *v. Christeve Enterprises, LLC,* et al.
Civil Case No. SAG-15-557
April 21, 2015
Page 6

    Other than the Personal Guarantees, Sherwin-Williams presents one exhibit to support its Motion: an affidavit from Vince Caruso, Sherwin-Williams's Director of Financial Services. Caruso states that the Corporate Defendants ceased purchasing Sherwin-Williams products before Sherwin-Williams attained the Net Sales Figures.[3] (Caruso Aff. ¶¶ 10, 21, ECF No. 33-2). Caruso does not state that the Corporate Defendants failed to purchase their requirements exclusively from Sherwin-Williams. Based on these undisputed facts, Sherwin-Williams would be entitled to judgment as a matter of law if the Supply Agreements unambiguously provided that the Net Sales Figures were minimum purchase requirements. Because it is reasonable to interpret the Supply Agreements as requirements contracts with no minimum purchase requirement, however, the Court concludes that Sherwin-Williams fails to demonstrate that it is entitled to judgment as a matter of law. Without evidence regarding who drafted the Supply Agreements, the Court cannot strictly construe the ambiguity against Sherwin-Williams. Instead, extrinsic evidence is required to resolve the ambiguity. Thus, the Court will deny Sherwin-Williams's Motion without prejudice.

**III. Conclusion**

    Based on the foregoing reasons, Sherwin-Williams's Motion is DENIED WITHOUT PREJUDICE. Despite the informal nature of this letter, it will be flagged as an Opinion and docketed as an Order.

                                                      Very truly yours,

                                                      /s/

                                                      Stephanie A. Gallagher
                                                      United States Magistrate Judge

---

[3] Brewer asserts that the Personal Guarantees do not require him to satisfy any of the Corporate Defendants' obligations under the Supply Agreements. The Court disagrees. First, the unambiguous language of the Personal Guarantees provides that Brewer "guarantees the prompt and complete payment and performance by [the Corporate Defendants] of all of [the Corporate Defendants'] obligations to Sherwin-Williams under the Supply Agreement." (Enterprises Guaranty at 1); (Christeve Guaranty at 1). Second, though the parties executed the Enterprises Supply Agreement after Brewer executed the Enterprises Guaranty, the Enterprises Guaranty unambiguously states that Brewer guarantees the prompt and complete payment and performance of all obligations "now or *hereafter* owing." (Enterprises Guaranty at 1) (emphasis added).